Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD LAWRENCE, | ) Case No. |
| Plaintiff, | ) |
| vs. | ) **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| FIVE9, INC., MICHAEL BURDIEK, DAVID DEWALT, SUSAN BARSAMIAN, JACK ACOSTA, ROWAN TROLLOPE, DAVID WELSH, KIMBERLY ALEXY, MICHAEL BURKLAND, ROBERT ZOLLARS, and ANA PINCZUK, | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

Plaintiff Richard Lawrence ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1.     This is an action brought by Plaintiff against Five9, Inc. ("Five9" or the "Company") and the members of Five9's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Five9 will be acquired by Zoom Video Communications, Inc. ("Zoom") through Zoom's subsidiary Summer Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On July 18, 2021, Zoom and Five9 issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated July 16, 2021 (the "Merger Agreement") to acquire Five9. Under the terms of the Merger Agreement, each Five9 stockholder will receive 0.5533 shares of Zoom Class A common stock for each share of Five9 common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $14.7 billion.

3.     On August 26, 2021, Five9 filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Five9 stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Qatalyst Partners LP ("Qatalyst Partners"); and (iii) Qatalyst Partners' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     In short, unless remedied, Five9's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to

enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company is headquartered in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Five9.

9. Defendant Five9 is a Delaware corporation, with its principal executive offices located at 3001 Bishop Drive, Suite 350, San Ramon, California 94583. The Company is an industry-leading provider of cloud contact center solutions. Five9's common stock trades on the Nasdaq Global Market under the ticker symbol "FIVN."

10. Defendant Michael Burdiek ("Burdiek") has been a director of the Company since September 2015.

11. Defendant David DeWalt ("DeWalt") has been a director of the Company since April 2012.

12. Defendant Susan Barsamian ("Barsamian") has been a director of the Company since January 2021.

13. Defendant Jack Acosta ("Acosta") has been a director of the Company since April 2011.

14. Defendant Rowan Trollope ("Trollope") has been Chief Executive Officer ("CEO") and a director of the Company since May 2018.

15. Defendant David Welsh ("Welsh") has been Lead Independent Director since February 2014 and a director of the Company since January 2011.

16. Defendant Kimberly Alexy ("Alexy") has been a director of the Company since October 2013.

17. Defendant Michael Burkland ("Burkland") has been Chairman or Executive Chairman of the Board since February 2014 and a director of the Company since January 2008. Defendant Burkland previously served as the Company's CEO from January 2008 to December 2017, and as President from January 2012 to December 2017.

18. Defendant Robert Zollars ("Zollars") has been a director of the Company since December 2013.

19. Defendant Ana Pinczuk ("Pinczuk") has been a director of the Company since June 16, 2021.

20. Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## OTHER RELEVANT ENTITIES

21.     Zoom provides a video-first unified communications platform that fundamentally changes how people interact.  Zoom connects people through frictionless and secure video, phone, chat, and content sharing and enable face-to-face video experiences for thousands of people in a single meeting across disparate devices and locations.  Zoom's cloud-native platform delivers reliable, high-quality video and voice that is easy to use, manage, and deploy; provides an attractive return on investment; is scalable and easily integrates with physical spaces and applications. Zoom's common shares trade on the Nasdaq Global Select Market under the symbol "ZM."

22.     Merger Sub is a Delaware corporation and wholly owned subsidiary of Zoom.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

23.     Five9 is a pioneer and leading provider of intelligent cloud software for contact centers.  Five9 was "born in the cloud," and since its inception, has exclusively focused on delivering its platform in the cloud and has disrupted a significantly large market by replacing legacy on-premise contact center systems.  Contact centers are vital hubs of interaction between organizations and their customers and, therefore, are essential to delivering successful customer service, sales and marketing strategies.  Five9's mission is to empower organizations to transform their contact centers into customer engagement centers of excellence, while improving business agility and significantly lowering the cost and complexity of their contact center operations. Five9's purpose-built, highly scalable and secure Virtual Contact Center cloud platform delivers a comprehensive suite of easy-to-use applications that enable the breadth of contact center-related customer service, sales and marketing functions.  Five9 has become an established leader in the cloud contact center market, facilitating more than seven billion call minutes between its more than 2,000 clients and their customers per year.  Five9 believes its ability to combine software and

telephony into a single unified platform that is delivered in the cloud creates a significant advantage.

24. On July 27, 2021, Five9 announced its second quarter 2021 financial results. Revenue for the second quarter of 2021 increased 44% to a record $143.8 million, compared to $99.8 million for the second quarter of 2020. Non-GAAP net income for the second quarter of 2021 was $16.0 million, or $0.23 per diluted share, compared to non-GAAP net income of $14.1 million, or $0.21 per diluted share, for the second quarter of 2020. Adjusted EBITDA for the second quarter of 2021 was $24.0 million, compared to $18.3 million, for the second quarter of 2020.

**The Proposed Transaction**

25. On July 18, 2021, Zoom and Five9 issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> SAN JOSE, Calif. and SAN RAMON, Calif., July 18, 2021 -- Zoom Video Communications, Inc. (NASDAQ: ZM) today announced it has entered into a definitive agreement to acquire Five9, Inc. (NASDAQ: FIVN), a leading provider of the intelligent cloud contact center, in an all-stock transaction valued at approximately $14.7 billion. Combining Five9's Contact Center as a Service ("CCaaS") solution with Zoom's broad communications platform will transform how businesses connect with their customers, building the customer engagement platform of the future.
>
> The acquisition is expected to help enhance Zoom's presence with enterprise customers and allow it to accelerate its long-term growth opportunity by adding the $24 billion contact center market. Five9 is a pioneer of cloud-based contact center software. Its highly-scalable and secure cloud contact center delivers a comprehensive suite of easy-to-use applications that allows management and optimization of customer interactions across many different channels.
>
> "We are continuously looking for ways to enhance our platform, and the addition of Five9 is a natural fit that will deliver even more happiness and value to our customers," said Eric S. Yuan, Chief Executive Officer and Founder of Zoom. "Zoom is built on a core belief that robust and reliable communications technology enables interactions that build greater empathy and trust, and we believe that holds particularly true for customer engagement. Enterprises communicate with their customers primarily through the contact center, and we believe this acquisition creates a leading customer engagement platform that will help redefine how

companies of all sizes connect with their customers.  We are thrilled to join forces with the Five9 team, and I look forward to welcoming them to the Zoom family."

"Businesses spend significant resources annually on their contact centers, but still struggle to deliver a seamless experience for their customers," said Rowan Trollope, Chief Executive Officer of Five9.  "It has always been Five9's mission to make it easy for businesses to fix that problem and engage with their customers in a more meaningful and efficient way.  Joining forces with Zoom will provide Five9's business customers access to best-of-breed solutions, particularly Zoom Phone, that will enable them to realize more value and deliver real results for their business. This, combined with Zoom's 'ease-of-use' philosophy and broad communication portfolio, will truly enable customers to engage via their preferred channel of choice."

Zoom's acquisition of Five9 is complementary to the growing popularity of its Zoom Phone offering.  Zoom Phone is a modern, cloud phone system that offers a digital alternative to legacy phone offerings, enabling organizations to connect and interact in new and convenient ways to keep businesses moving.

The combination also offers both companies significant cross-selling opportunities to each other's respective customer bases.  As a result of the acquisition, Zoom will play an even greater role in driving the digital future and bringing companies and their customers closer together.

Following the close of the transaction, Five9 will be an operating unit of Zoom and Rowan Trollope will become a President of Zoom and continue as CEO of Five9, reporting to Eric Yuan.

**Details on the Proposed Transaction**

As part of the agreement, Five9 stockholders will receive 0.5533 shares of Class A common stock of Zoom Video Communications, Inc. for each share of Five9, Inc. Based on the closing share price of Zoom Class A common stock as of July 16, 2021, this represents a per share price for Five9 common stock of $200.28 and an implied transaction value of approximately $14.7 billion.

The Boards of Directors of Zoom and Five9 have approved the transaction.  The Board of Directors of Five9 recommends that Five9 stockholders approve the transaction and adopt the merger agreement.  The transaction, which is anticipated to close in the first half of calendar year 2022, is subject to approval by Five9 stockholders, the receipt of required regulatory approvals and other customary closing conditions.

Additional details and information about the terms and conditions of the acquisition will be available in current reports on Form 8-K to be filed by Zoom and Five9 with the Securities and Exchange Commission.

**Advisors**

Goldman Sachs & Co. LLC is serving as exclusive financial advisor and Cooley LLP is serving as legal counsel to Zoom. Qatalyst Partners is serving as exclusive financial advisor and Latham and Watkins LLP is serving as legal counsel to Five9.

**Insiders' Interests in the Proposed Transaction**

26. Five9 insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Five9.

27. Notably, certain Company insiders have secured positions for themselves with the combined company. Specifically, in connection with the Merger Agreement and contingent upon the closing of the Proposed Transaction, defendant Trollope has entered into an employment offer letter with Zoom pursuant to which he will serve as a President of Zoom and CEO of Five9 following the closing. Pursuant to his offer letter, defendant Trollope will be entitled to an annual base salary of $600,000 and will have a target annual bonus opportunity equal to 100% of his annual base salary. Additionally, effective as of the closing, defendant Trollope will be granted an award of Zoom restricted stock units (a "Zoom RSU award") with a grant date value of $40 million.

28. In addition, if they are terminated in connection with the Proposed Transaction, Five9's named executive officers stand to receive substantial cash severance payments as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites / Benefits ($)(3) | Tax Reimbursement ($)(4) | Total ($) |
|---|---|---|---|---|---|
| Rowan Trollope | 71,156 | 25,055,668 | — | 22,918,037 | 48,044,861 |
| Barry Zwarenstein | 907,283 | 15,354,814 | 35,064 | — | 16,297,161 |
| Daniel Burkland | 777,837 | 14,338,379 | 40,047 | — | 15,156,263 |
| Scott Welch | 600,243 | 11,061,786 | 40,047 | — | 11,702,076 |

**The Proxy Statement Contains Material Misstatements or Omissions**

29. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Five9's stockholders. The Proxy Statement misrepresents or omits

material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

30. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Qatalyst Partners; and (iii) Qatalyst Partners' potential conflicts of interest.

*Material Omissions Concerning the Company's Financial Projections*

31. The Proxy Statement omits material information regarding the Company's financial projections.

32. For example, with respect to the "Updated Five-Year Plan and Related Extrapolations" the Proxy Statement fails to disclose the line items underlying: (i) Adjusted Gross Profit; (ii) Adjusted EBITDA; (iii) Non-GAAP Operating Income; and (iv) Unlevered Free Cash Flow.

33. The omission of this material information renders the statements in the "Projected Financial Information" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Qatalyst Partners' Financial Analyses*

34. The Proxy Statement omits material information regarding Qatalyst Partners' financial analyses.

35. The Proxy Statement describes Qatalyst Partners' fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Qatalyst Partners' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Five9's public stockholders are unable to

fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Qatalyst Partners' fairness opinion in determining whether to vote in favor of the Proposed Transaction.

36. With respect to Qatalyst Partners' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 6.0% to 10.0%; (ii) the cash and cash equivalents of Five9, as of June 30, 2021; (iii) the face value of Five9's outstanding convertible notes, as of July 14, 2021; (iv) the value of Five9's finance leases, as of June 30, 2021; and (v) the number of fully diluted shares of Five9 common stock outstanding as of July 14, 2021.

37. With respect to Qatalyst Partners' *Illustrative Selected Companies Analysis* and *Illustrative Selected Transactions Analysis*, the Proxy Statement fails to disclose (i) the face value of Five9's outstanding convertible notes, as of July 14, 2021, as provided by Five9 management; and (ii) the number of fully diluted shares of Five9 Common Stock outstanding as of July 14, 2021.

38. Without such undisclosed information, Five9 stockholders cannot evaluate for themselves whether the financial analyses performed by Qatalyst Partners were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Qatalyst Partners' opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

39. The omission of this material information renders the statements in the "Opinion of Five9's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Qatalyst Partners' Potential Conflicts of Interest***

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

40. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Qatalyst Partners.

41. The Proxy Statement fails to disclose whether Qatalyst has performed any services for Zoom or its affiliates in the two years preceding its engagement to provide financial advisory services to Five9 in connection with the Proposed Transaction and, if so, the nature of the services provided and fees received for such services.

42. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

43. The omission of this material information renders the statements in the "Opinion of Five9's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

44. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Five9 will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

45. Plaintiff repeats all previous allegations as if set forth in full.

46. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements,

in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

47. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Qatalyst and Qatalyst Partners' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

48. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

49. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

50. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

51. Plaintiff repeats all previous allegations as if set forth in full.

52. The Individual Defendants acted as controlling persons of Five9 within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Five9, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC,

- 12 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

55. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.

As a direct and proximate result of defendants' conduct, Five9's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Five9, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Five9 stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

| | |
|---|---|
| Dated: September 9, 2021 | **WEISSLAW LLP**<br>Joel E. Elkins<br><br>By: */s/ Joel E. Elkins*<br><br>Joel E. Elkins<br>9100 Wilshire Blvd. #725 E.<br>Beverly Hills, CA 90210<br>Telephone:  310/208-2800<br>Facsimile:   310/209-2348<br>               -and-<br>Richard A. Acocelli<br>1500 Broadway, 16th Floor<br>New York, NY  10036<br>Telephone: 212/682-3025<br>Facsimile:  212/682-3010<br><br>*Attorneys for Plaintiff* |

- 15 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS